

GIN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
04/22/2020

| | | |
|---|---|---|
| IN RE: | § | |
| EXCO SERVICES, INC. | § | CASE NO: 18-30167 |
| | § | |
| EXCO RESOURCES, INC., *et al* | § | CASE NO: 18-30155 |
| | § | Jointly Administered Order |
| Debtors | § | |
| | § | CHAPTER 11 |

### MEMORANDUM OPINION

Shell Energy North America (US), L.P. ("SENA") filed a Motion to Enforce the Bankruptcy Court's Jurisdiction (ECF No. 242) seeking an order declaring that this Court retains exclusive jurisdiction over a breach of contract dispute between SENA and Raider Marketing, L.P. ("Raider"). SENA filed its motion following Raider's attempt to demand arbitration of the dispute. The Court holds:

- The parties entered into a valid arbitration agreement prior to bankruptcy.
- The facts do not warrant the denial of the enforcement of the arbitration agreement.
- Raider did not waive its right to compel arbitration.

### BACKGROUND

Prior to bankruptcy, EXCO Operating Company contracted to sell natural gas to BG Energy Merchants, LLC.[1] EXCO assigned its rights and obligations under the contract to Raider, EXCO's marketing affiliate. BG Energy assigned its rights and obligations to SENA. Pursuant to the contract, any dispute between the parties was to be resolved through binding arbitration. In November and December 2017, Raider delivered its regular contractual production of natural gas to SENA and issued invoices to SENA totaling approximately $34

---

[1] This brief factual history is designed to provide a background of the SENA-Raider dispute and does not constitute findings of fact.

million. In late December 2017, SENA became concerned with Raider's liquidity and demanded a $45 million adequate assurance payment. SENA believes it made the demand pursuant to the contract due to doubts about Raider's liquidity. Raider claims the demand constituted an unjustified breach. To date, SENA has not paid the invoices and Raider has not paid the adequate assurance demand.

## PROCEDURAL HISTORY

On December 27, 2017, Raider filed suit against SENA in the District Court of Harris County, Texas. After EXCO and Raider filed chapter 11 bankruptcy petitions on January 15, 2018, Raider dismissed the state court lawsuit without prejudice. In lieu of the state court suit, Raider initiated a breach of contract adversary proceeding against SENA with the bankruptcy court. In response, SENA moved to compel arbitration of the adversary proceeding. On March 23, 2018, Raider once again dismissed its complaint without prejudice.

SENA filed proofs of claim against Raider and EXCO Operating Company, each in the amount of $45,750,202.85 on April 13, 2018. The Debtors objected to the claim against EXCO, arguing that EXCO was no longer a party to the natural gas contract in November 2017, and moved to estimate the value of that claim at $0.00. However, on December 3, 2018, SENA and Raider pressed pause and agreed to resolve the claims dispute following the effective date of a plan of reorganization. Six months later, on June 18, 2019, the Court entered an order confirming the Debtors' plan of reorganization.

The confirmation order specifically provided that the SENA-Raider dispute would "be adjudicated and determined reasonably promptly following the Effective Date [of the plan], pursuant to a schedule to be mutually agreed upon by SENA and the Debtors." (ECF No. 286 at 9). The confirmation stated that "SENA reserves all rights to exercise its contractual rights to

arbitrate the liquidation of the EXCO v. SENA Claims, the SENA POCs, and the Setoff Rights and the Debtors reserve all rights to object to such relief." (ECF No. 286 at 9). The confirmation order was silent as to whether Raider's right to compel arbitration was preserved.

Raider initiated an arbitration proceeding against SENA on October 22, 2019. SENA responded by filing the present motion seeking denial of arbitration.

## DISCUSSION

The Supreme Court has held that Congress has expressed a clear policy favoring enforcement of contractual arbitration clauses. Although SENA previously moved to compel arbitration of this dispute, it now asks the Court to deny arbitration. SENA argues that arbitration is inappropriate for two reasons. First, SENA believes the purposes of the Bankruptcy Code would be frustrated by allowing arbitration of this dispute. Second, SENA claims that Raider waived its right to arbitrate by pursuing litigation of the dispute. For the reasons that follow, Raider is entitled to arbitrate this dispute.

There is "a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). Generally, arbitration is mandatory when a dispute falls within the scope of a valid arbitration agreement. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). To defeat a valid agreement, "the party opposing arbitration can show that its position is supported by a congressional command that supersedes the direction of the Federal Arbitration Act." *In re Mirant Corp.*, 316 B.R. 234, 237 (Bankr. N.D. Tex. 2004).

Before a bankruptcy court may decline to enforce an arbitration agreement, it must determine "whether the proceeding derives exclusively from the provisions of the Bankruptcy Code and, if so, whether arbitration of the proceeding would conflict with the purposes of the

Code." *In re Nat'l Gypsum Co.*, 118 F.3d 1059, 1067 (5th Cir. 1997). The *National Gypsum* standard forms a two-part test. First, the court must determine whether the proceeding adjudicates rights created exclusively by the Bankruptcy Code. *In re Henry*, 944 F.3d 587, 590-91 (5th Cir. 2019). If so, the court may proceed to the second inquiry: "whether arbitration would conflict with the purposes of the Bankruptcy Code." *Id.* at 591. Courts frequently cite the centralized resolution of bankruptcy issues, the need to curtail piecemeal litigation, and the bankruptcy court's undisputed power to enforce its own orders as key purposes of the Code. *E.g.*, *In re Trevino*, 599 B.R. 526, 541 (Bankr. S.D. Tex 2019). If the proceeding involves rights stemming from the Code and arbitration conflicts with the Code's purposes, the Court may override otherwise mandatory arbitration.

This dispute arises from alleged breaches of a natural gas purchase contract on the eve of Raider's bankruptcy. That contract contains a clause mandating that "[a]ny [d]ispute among the parties" be "resolved through final and binding arbitration." (ECF No. 286 at 2). Both parties agree that the arbitration provision is valid. (*See* ECF No. 286 at 11). Further, the breach of contract dispute plainly falls within the scope of the arbitration clause. The parties are bound by an arbitration clause, which a federal court must ordinarily respect.

Whether this Court has discretion to deny arbitration first depends on whether the proceeding derives exclusively from the provisions of the Code. This dispute comes before the Court through the claims allowance process, a creature of the Code, but the substantive issues derive from state contract law. SENA argues that because the proceeding arises through the claims allowance process, a feature unique to the Code, the first prong is satisfied. SENA's view focuses solely on the procedural form of the proceeding. Under SENA's interpretation, because the claims objection process is a "classic example of core bankruptcy jurisdiction," a claim

objection always meets the first prong. (*See* ECF No. 242 at 17 (quoting *In re Martinez*, No. 06-34385, 2007 WL 1174186, at *5 (Bankr. S.D. Tex. Apr. 19, 2007))). However, the Fifth Circuit expressly states that arbitrability does not hinge on whether a proceeding is core. *Nat'l Gypsum*, 118 F.3d at 1067 ("Certainly not all core bankruptcy proceedings are premised on provisions of the Code that 'inherently conflict' with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code."). *National Gypsum* directs the Court to look to the "underlying nature of the proceeding," not whether the Court has core or noncore jurisdiction. 118 F.3d at 1067. SENA's interpretation runs contrary to that directive.

Even if the Court adopts SENA's reading and finds that the dispute meets the first prong, the dispute does not meet the second prong. At this late stage of Raider's bankruptcy, arbitration does not offend the purpose of the Code. Consolidation of proceedings before this Court no longer furthers the reorganizational purpose of chapter 11. Raider emerged from chapter 11 in June 2019 and only a handful of claims remain unresolved. Raider completed its reorganization and the confirmed plan describes SENA's treatment should it prevail in this dispute. SENA has not stated a compelling reason why a centralized forum remains necessary.

Arbitration also does not offend this Court's authority to enforce its own orders. Allowing arbitration is consistent with the Confirmation Order. The Confirmation Order expressly preserves SENA's right to seek arbitration and is silent as to Raider's rights to seek arbitration. SENA's retention of its contractual right to arbitrate shows that the parties contemplated that arbitration might occur. The Confirmation Order did not grant this Court exclusive jurisdiction over the dispute.

The dispute will be arbitrated.

*Setoff*

Raider and SENA acknowledge that there is some chance that resolution of the dispute will result in mutual debts between the parties. That scenario would require a determination of setoff or recoupment rights. Setoff allows a creditor to deduct a debt owed to the debtor from a claim it holds against the debtor, based upon separate transactions. Recoupment is a vehicle used to adjust amounts owed based upon a single transaction. Recoupment "is merely the means used to determine the proper liability on the amounts owed" and it is "derived from the common law pleading rules concerning counterclaims." *Schachter v. Tolassi (In re East Second St. Assocs.)*, 207 B.R. 64, 68 (Bankr. S.D.N.Y. 1997). "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995).

The Confirmation Order enjoins claim holders from "asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from [the claim holder] . . . on account of or in connection with or with respect to any such claims or interests unless such [claim holder] has timely asserted such setoff right in a document filed with the Bankruptcy Court." (Case No. 18-30155, ECF No. 2188 at 44). Section OO of the Confirmation Order, titled "Provisions Regarding SENA," does not mention recoupment. However, any rights of setoff held by SENA or Raider are preserved and "shall not be extinguished or otherwise affected by the Confirmation Order.". (Case No. 18-30155, ECF No. 2188 at 81). The Confirmation Order also preserves SENA's right to seek arbitration of setoff, however, the Confirmation Order is

silent regarding Raider's right to seek setoff arbitration. (Case No. 18-30155, ECF No. 2188 at 82).

The Plan itself preserves any rights of setoff or recoupment that the debtors' possess, and states that the allowance of a claim does not "constitute a waiver or release . . . of any such right." (Case No. 18-30155, ECF No. 2188 at 157). The Plan goes on to state that "[i]n no event shall any [claim holder] be entitled to recoup any [c]laim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such [h]older actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim . . . that such [h]older asserts, has, or intends to preserve any right of recoupment." (Case No. 18-30155, ECF No. 2188 at 167).

The Confirmation Order explicitly preserves both parties' setoff rights, and expressly preserves SENA's right to arbitrate setoff. For the same reasons previously stated, SENA's retention of the right to seek arbitration shows that the parties contemplated that arbitration of setoff might occur. Should a setoff determination prove necessary, the arbitrator has jurisdiction to make the setoff determination.

*Waiver*

Having determined that the Court does not have discretion to decline arbitration of the dispute, the Court must now decide whether Raider waived its right to demand arbitration. Arbitration rights, like all contractual provisions, are subject to waiver. *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986). A party waives its right to compel arbitration when it "substantially invokes the judicial process to the detriment or prejudice of the other party." *Id.* at 496-97; *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009). Thus,

determining waiver requires a two-step inquiry asking whether a party substantially invoked the judicial process, and if so, whether the opposing party was prejudiced by the invocation. *Nicholas*, 565 F.3d at 907-08. Waiver is a disfavored finding. *Id.* at 907.

Generally, a party substantially invokes the judicial process when it pursues litigation before reversing course by demanding arbitration. *Id.* Filing a lawsuit indicates a "'disinclination' to arbitrate." *Id.* at 908 (quoting *Joseph Chris Pers. Servs. Inc. v. Rossi*, 249 F. App'x 988, 991 (5th Cir. 2007)). The Fifth Circuit acknowledges that exceptions to the rule that filing suit substantially invokes the judicial process may exist, but it has not affirmatively recognized any exceptions. *Id.*

Even if the party demanding arbitration substantially invokes the judicial process, the party opposing arbitration must be prejudiced before waiver occurs. "In this context, 'prejudice' means 'the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue.'" *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quoting *Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). Delay alone is not sufficient to find waiver. *Nicholas*, 565 F.3d at 910. However, the reason for the delay bears on the question of prejudice. *See id.* Prejudice has been found where the party opposing arbitration incurred "very significant legal fees" and was forced to participate "in full-fledged discovery, expert preparation, and trial preparation." *Republic*, 383 F.3d at 347.

Here, Raider substantially invoked the judicial process, but SENA has not been prejudiced. Raider took various acts invoking the judicial process, including filing the state court suit, filing an adversary proceeding, and objecting to one of SENA's proofs of claim. While Raider quickly dismissed the suits and the parties agreed to resolve the claim objection post-

confirmation, Raider's initial complaints suggest a disinclination to arbitrate under Fifth Circuit precedent.

Raider's invocation of the judicial process did not prejudice SENA because Raider never attempted to litigate the merits of the dispute, no discovery occurred, and the delay was reasonable in light of the chapter 11 process. Since the conflict with SENA arose, Raider has initiated a state court proceeding, an adversary proceeding, and a claim objection. At a glance, Raider's numerous filings, coupled with the two-year delay before Raider demanded arbitration, suggests that SENA could have suffered prejudice. However, a closer look at the facts shows that Raider never attempted to reach the merits of the dispute. Instead, Raider elected, with SENA's consent, to seek resolution of the dispute only after exiting chapter 11. Raider took care to ensure that no proceeding reached discovery or the merits. Raider dismissed the state court action after filing for bankruptcy. The Court granted Raider's motion to dismiss the adversary proceeding on March 29, 2018, a mere two months after Raider filed the adversary complaint. Raider and SENA then agreed to resolve the claim objection following confirmation of a chapter 11 plan. Raider's filings did not unfairly prejudice SENA because a court has never approached the merits of the dispute. The absence of prejudice is highlighted by the explicit preservation of arbitration rights in the confirmation order. Although the preservation was in favor of SENA, it nevertheless is persuasive evidence that a waiver should not be found.

No discovery has been conducted to date. This fact weighs strongly against a waiver of arbitration. Courts often find prejudice when a party seeks arbitration following substantial discovery because arbitration often does not always permit extensive discovery and complying with discovery requests is time consuming. *E.g.*, *Tenneco Resins, Inc. v. Davy Int'l., AG*, 770 F.2d 416, 421 (5th Cir. 1985). However, when minimal discovery has occurred, courts generally

do not find prejudice. *Id.* Here, no discovery has occurred at all. SENA has not dedicated time responding to voluminous discovery requests. Nor has Raider used discovery to gain an advantage during arbitration. SENA has not been forced to bear the considerable cost of discovery in this case.

Finally, given the agreement to resolve the dispute after plan confirmation, Raider's two-year delay in demanding arbitration did not prejudice SENA. Both parties cite case law describing the period of time which may pass before delay becomes prejudicial. *See Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991) (no prejudice following thirteen month delay). *But see In re Mirant*, 613 F.3d 584, 592 (5th Cir. 2010) (prejudice following eighteen month delay). Without considering the procedural history, the length of delay is uninformative. In *Mirant*, the defendant explicitly mentioned its right to compel arbitration in its answer, but still filed multiple motions to dismiss and a motion to withdraw the reference before moving to compel arbitration. *Mirant*, 613 F.3d at 587-88. Unlike Raider, the defendant in *Mirant* actually litigated the claims before exercising its contractual arbitration right.

The delay here was not caused because Raider affirmatively litigated this dispute before changing its mind. Instead, the delay stemmed from Raider's desire to reorganize prior to tackling its dispute with SENA. The state court suit and the adversary proceeding were dismissed one month and two months after filing, respectively. The claim objection remained pending for three months before the parties agreed to resolve the dispute post-confirmation. Since filing for chapter 11, Raider's actions showed a consistent intent to resolve this dispute post-confirmation. Although that course of action delayed resolution, SENA has not shown prejudice as a result.

*Conclusion*

For the reasons stated above, SENA's motion is denied. A separate order will be entered.

SIGNED **April 22, 2020.**

                                                           Marvin Isgur
                                        UNITED STATES BANKRUPTCY JUDGE